**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**WILLIAM T. TRAVIS,**

    **Petitioner,**

**v.**                               **CASE NO. 6:08-cv-396-Orl-35KRS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,**

    **Respondents.**

                                   /

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 15). Petitioner filed a reply to the response (Doc. No. 20).

Petitioner alleges four claims for relief in his habeas petition: 1) the trial court erred by denying his motion for a mistrial; 2) counsel was ineffective for failing to convey a plea offer by the prosecution; 3) counsel was ineffective for failing to file a motion to suppress his confession; and 4) counsel was ineffective for failing to subpoena certain defense witnesses for trial.

*I.*    ***Procedural History***

Petitioner was charged by information with aggravated battery. A jury trial was held,

and Petitioner was found guilty as charged. The trial court adjudicated Petitioner guilty of the crime and sentenced him to imprisonment for a term of ten years. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which entered an order denying certain claims and scheduling an evidentiary hearing as to certain claims. After the evidentiary hearing, the trial court entered an order denying the remaining claims. Petitioner appealed the denial of his Rule 3.850 motion, and the state appellate court affirmed the denial *per curiam*.

## II.     Legal Standards

### A.     Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.   Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

---

[1] Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

3

performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. *Exhaustion and Procedural Default*

One procedural requirement set forth in the AEDPA precludes federal courts, absent

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (i) there is an absence of available State corrective process; or
> >
> >     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id*. at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon

and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir. 2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only

6

occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.  Analysis

#### A.  Factual Background

The evidence at trial revealed that Petitioner battered his wife, Francine Travis, with a baseball bat during an argument, causing injuries to her body. The beating occurred in the couple's residence, and Jeanette Colsch Hayes, who was living at the residence at the time, witnessed the beating along with others who were in the residence at the time.

#### B.  Claim One

Petitioner argues that the trial court erred by denying his motion for a mistrial. At trial, the victim mentioned that Petitioner "smoked pot." (Appendix C, Transcript of Trial at 66.) Petitioner's counsel moved for a mistrial, which was denied. *Id*. at 70. Petitioner states that the reference to his drug usage was a violation of his due process rights, his right to a fair trial, and his right to an impartial jury.

Petitioner raised this claim on direct appeal, but he did not present the claim in

7

terms of a deprivation of a federal constitutional right. Generally, a "federal court may not grant habeas corpus relief to a state prisoner who has not exhausted his available state remedies." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). The exhaustion of state remedies requires that petitioners "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citation omitted) (quotations omitted). Hence, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Id*. at 365-66.

In the present case, Petitioner only apprised the state court that the instant claim involved a violation of state law. Petitioner, on direct appeal, made no reference to the federal constitutional issues raised here. *Ziegler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (finding that the petitioner's federal habeas claims were not raised in the state court when the direct appeal made no reference to the federal constitutional issues raised in the federal habeas petition). Thus, Petitioner's claim is unexhausted.

Moreover, since he would be precluded from now raising this claim in the state courts, it is procedurally defaulted. Petitioner has not shown either cause or prejudice that would excuse the default. Likewise, Petitioner has neither alleged nor shown the applicability of the actually innocent exception. The entire record has been reviewed, and the Court concludes that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, this claim is denied.

## C. Claim Two

Petitioner asserts that counsel was ineffective for failing to convey a plea offer made by the prosecution. This claim was raised in Petitioner's Rule 3.850 motion and was denied.

At the evidentiary hearing, Janette Travis, Petitioner's daughter, testified that, just prior to sentencing, Petitioner's counsel told her that there had been "talk of three years, an offer of three years." (Appendix I, Transcript of Evidentiary Hearing Held on May 31, 2006, at 23.) However, she also mentioned that she was not present during any plea negotiations between Petitioner's counsel and the prosecutor and that she was not really sure when Petitioner's counsel informed her of the plea offer. *Id*. at 28, 30.

Petitioner testified that he was not aware of any plea offer until Ms. Travis called him at the jail after sentencing and mentioned that Petitioner's counsel had told her about a "thirty-six month deal on the board." *Id*. at 38.

Petitioner's counsel, Fred Leone, testified that there were two criminal cases pending that involved Petitioner; that there was a plea offer involving this case only; that the plea offer was discussed with Petitioner; and that Petitioner was only willing to enter a plea as to both cases. (Appendix I, Transcript of Evidentiary Hearing Held on November 9, 2006, at 19.) Thus, without a plea offer relating to both cases, Petitioner wanted to go to trial, and, according to Mr. Leone, as a result, "there was really no firm plea offer." *Id*. at 19, 23. The trial court found the testimony of Mr. Leone to be credible and did not find credible the testimony of either Petitioner or Ms. Travis. Consequently, the trial court determined that Petitioner failed to satisfy either prong of the *Strickland* test.

9

Petitioner has failed to demonstrate any basis to second-guess the trial court's credibility evaluation of the witnesses. Moreover, based on the testimony of Petitioner's counsel that there was "no firm plea offer" and that Petitioner was only willing to accept a plea offer relating to both cases, Petitioner has not shown deficient performance on the part of counsel or that he sustained prejudice.

Under the circumstances, it cannot be said that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

### D.     Claim Three

Petitioner argues that counsel was ineffective for failing to file a motion to suppress his confession to the police. According to Petitioner, at the time he made the statements to the police, his "mental capacity was critically impaired." This claim was raised in Petitioner's Rule 3.850 motion, and it was denied.

Mr. Leone testified at the evidentiary hearing that, when Petitioner was in court for a hearing on a dependency case, Jeanette Colsch Hayes informed the court deputies that she had been a victim of a crime at the hands of Petitioner. (Appendix I, Transcript of Evidentiary Hearing Held on November 9, 2006, at 16.) The deputies immediately arrested Petitioner and placed him in a holding area, where he "had some sort of seizure" and was taken to the hospital *Id*. While in the hospital, Petitioner initiated contact with law enforcement and gave a statement regarding this case, and this statement was published

10

to the jury.³ *Id*. at 16-17.

Mr. Leone found "no basis to file a motion to suppress . . . as it appeared [that Petitioner] initiated contact" with law enforcement. *Id*. at 17. Mr. Leone noted that, in reviewing the tape and the transcript thereof, it was apparent that Petitioner voluntarily discussed these matters with law enforcement and that it was Petitioner's decision to discuss these matters. *Id*. at 17-18. Mr. Leone also testified that Petitioner had waived his *Miranda*⁴ rights both orally and in writing. *Id*. at 28.

Deputy Madsen testified at trial that Petitioner approached him about providing a statement and that Petitioner was read (and waived) his *Miranda* rights and also signed a *Miranda* waiver form. (Appendix C, Transcript of Trial at 105.)

As noted by the Eleventh Circuit Court of Appeals in *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994):

> The Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved. Intensive scrutiny and second-guessing of attorney performance are not permitted. Because it is a wide range of performance that is constitutionally acceptable, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. Cases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between. **This case is not one of them.**

(Citations omitted) (quotations omitted) (emphasis added). Mr. Leone made the decision not to file a motion to suppress after considering the tactical benefit to his client, and he

---

³In the statement, Petitioner admitted hitting the victim four times with his fist but denied using a baseball bat.

⁴*Miranda v. Arizona*, 384 U.S. 436 (1966).

11

did not merely fail to file the motion through inadvertence or ineptitude. Whether or not to file a motion to suppress a defendant's statements is a matter of trial strategy, which will be accorded great deference. *See Wilson v. Schomig*, 234 F. Supp.2d 851, 870 (C.D. Ill. 2002). This strategy also seems reasonable in light of Deputy Madsen's testimony that Petitioner waived his *Miranda* rights orally and in writing. Consequently, Mr. Leone's failure to file a motion to suppress Petitioner's statements to the police did not constitute ineffective assistance of counsel.

In addition, Petitioner has failed to demonstrate that the use of the statements prejudiced the outcome of his trial. The statements that Petitioner made to the police did not constitute all of the State's evidence against Petitioner. The State provided other witnesses who testified as to the crime committed by Petitioner. The Court is unable to conclude that the result of the trial would have been different had the statements been suppressed.

Under the circumstances, it cannot be said that the state court's denial of this claim was "contrary to, or involved an unreasonable application of, clearly established federal law" or was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). As a result, Petitioner is not entitled to federal habeas relief on this claim.

### E.   Claim Four

Petitioner argues that counsel was ineffective for failing to subpoena certain defense witnesses for trial. Petitioner identifies the following individuals: Janette Travis, who was Petitioner's daughter and would have testified that she was unaware of any incident

12

involving a bat; Stephen Mays, who was Petitioner's attorney in the dependency case and would have testified that Ms. Hayes stated that the bruises on the victim did not come from a baseball bat; Charlie Crawford, an attorney who would have testified as to "facts impeaching" Ms. Hayes; and George Hayes, who would have testified that the children were not in the residence at the time of the crime. This claim was raised in Petitioner's Rule 3.850 motion and was denied.

The record reflects that Ms. Travis' presence as a witness was waived by Petitioner himself during the trial. (Appendix C, Transcript of Trial at 140.) Petitioner wanted to move forward with the trial and did not want any delays. When Ms. Travis was unavailable appear at trial because of her new job, Petitioner did not want a continuance. *Id*. at 139-41. Moreover, Mr. Leone testified at the evidentiary hearing that he spoke with Janette Travis about testifying at trial and that she did not want to do so. (Appendix I, Transcript of Evidentiary Hearing Held on November 9, 2006, at 26.)

The testimony of Mr. Mays and Mr. Crawford would have served only to impeach the testimony of Ms. Hayes regarding Petitioner beating the victim with a bat. However, Mr. Leone testified that such impeachment could have led to Ms. Hayes testifying about other acts of domestic violence committed by Petitioner against her and the victim. (Appendix I, Transcript of Evidentiary Hearing Held on November 9, 2006, at 23-25.) In fact, Mr. Leone noted that Ms. Hayes could have testified that Petitioner had terrorized both her and the victim over an extended period of time and that he had been arrested multiple times as a result of his actions. (Appendix I, Transcript of Evidentiary Hearing Held on May 31, 2006, at 65.) Mr. Leone did not want to risk opening the door to such evidence, especially in light of the relatively minor benefit from such impeachment

13

testimony. *Id*. at 66.

Finally, the trial court found that George Hayes' testimony that there were no children at the residence at the time of the incident would have been improper impeachment on a collateral matter. *See Johnson v. State*, 699 So. 2d 257 (Fla. 5th DCA 1997). Although the victim testified that "the children" saw Petitioner hit her with the bat, none of the children testified at trial, and the victim never identified any particular child. (Appendix B, Transcript of Trial at 28). As such, Petitioner has not shown that counsel acted deficiently with regard to this matter.

Moreover, the presentation of witness testimony is essentially strategy, and it is, therefore, within trial counsel's domain. *See Gasanova v. United States*, 2007 WL 2815696, at *9 (W.D. Tex. September 6, 2007). Mere speculation as to the testimony an uncalled witness would have given is too uncertain. *Id*. A petitioner cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim. *Id*. In the case of an uncalled witness, at the very least, the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial. *Id*. To show prejudice, the petitioner must show not only that the uncalled witness's testimony would have been favorable, but also that the witness would have testified at trial. *Id*.

As such, Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying relief on this claim.

Any of Petitioner's allegations not specifically addressed herein have been found

14

to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by William T. Travis is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, this 4th day of May 2010.

Copies to:
sa Counsel of Record
5/4
William T. Travis

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE